James Weiler; AZ Bar No. 034371
**ZOLDAN LAW GROUP, PLLC**
14500 N. Northsight Blvd., Suite 133
Scottsdale, AZ 85260
Tel & Fax: 480.442.3410
jweiler@zoldangroup.com

Attorneys for Plaintiff Duncan Wood

## UNITED STATES DISTRICT COURT

## DISTRICT OF DELAWARE

| | |
|---|---|
| **Duncan Wood**, an Arizona resident;<br><br>Plaintiff,<br><br>v.<br><br>**PlayLive Nation, Inc.**, a Delaware Corporation and **Simplicity eSports and Gaming Company**, a Delaware Corporation,<br><br>Defendant. | Case No.<br><br><br><br>**COMPLAINT** |

Plaintiff Duncan Wood for his Complaint against Defendants PlayLive Nation, Inc. and Simplicity eSports and Gaming Company, hereby alleges as follows:

## **NATURE OF THE CASE**

1. Plaintiff brings this action against Defendants for their unlawful failure to make timely and reasonable payment of wages under the Arizona Wage Statute, A.R.S. §§ 23-351, 23-352, 23-353, and 23-355 ("Arizona Wage Statute").

2. This action is also brought to recover unpaid wages, treble damages and statutory penalties resulting from Defendants' violations of the Arizona Wage Statute.

3. This action is also brought for breach of contract, breach of the duty of good faith and fair dealing, and unjust enrichment.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter and the parties hereto pursuant to 28 U.S.C. § 1332 as the matter in controversy exceeds the sum of $75,000 as Plaintiff and Defendants are citizens of different states.

5. Venue is proper in this District Court under 28 U.S.C. §§1391(b) and (c) and pursuant to the forum selection clause in the Employment Agreement (the "Agreement") entered into between Plaintiff and Defendants.

6. Pursuant to the Agreement, the disputes between the parties shall be governed by the laws of the State of Arizona.

## PARTIES

7. At all relevant times to the matters alleged herein, Plaintiff Duncan Wood, an unmarried man, resided in Maricopa County, Arizona. Pursuant to the Agreement, Plaintiff was an employee of Defendants. At all relevant times, Plaintiff was an employee of the Defendants as defined in A.R.S. § 23-350.

8. Defendant PlayLive Nation, Inc. ("PlayLive Nation") is a Delaware corporation, authorized to do business in Arizona, and was Plaintiff's employer as defined by A.R.S. § 23-350.

9. Defendant Simplicity eSports and Gaming Company ("Simplicity") is a Delaware corporation, authorized to do business in Arizona, and was Plaintiff's employer as defined by A.R.S. § 23-350. Defendant PlayLive Nation was the alter ego or business conduit of Defendant Simplicity. At all times relevant, Defendant Simplicity so dominated and

controlled Defendant PlayLive Nation as to make it simply instrumentality or adjunct to Defendant Simplicity.

## FACTUAL ALLEGATIONS

10. Defendant PlayLive Nation is a wholly owned and controlled subsidiary of Simplicity.

11. Defendant PlayLive Nation is a premium social gaming lounge franchisor. On or about August 1, 2019, Defendant Simplicity acquired 100% of the issued and outstanding share of Defendant PlayLive Nation by way of a merger and pursuant to the Agreement and Plan of Merger.

12. Defendant Simplicity is a publicly traded corporation which operates an esports organization with a fan base competing in popular video game titles across various genres. Simplicity operates retail esport centers giving players or gamers the opportunity to enjoy and compete in esports in a social environment.

13. On or around August 1, 2019, Plaintiff entered into an Employment Agreement with Defendants.

14. Pursuant to the Agreement, Plaintiff was to be employed by Defendants as Chief Executive Officer of Defendant PlayLive Nation for a period of three years.

15. At all times relevant, Plaintiff performed all of his duties and obligations pursuant to the Agreement. Plaintiff devoted his business time, energies, skills, and talents to serving in his capacity of Chief Executive Officer of Defendants and in the best interests of Defendants.

16. Pursuant to Section 3(a) of the Agreement, Plaintiff was to be paid a base Salary of $168,000 per year, payable in substantially equal monthly or more frequent installments.

17. On or about April 6, 2020, Defendants informed Plaintiff that he was on "furlough" and stated that he would no longer be paid his salary moving forward and that the "furlough" start date would be back dated to April 1, 2020.

18. Despite being on "furlough", Defendants mandated that Plaintiff continue to perform all of his job duties from April 1, 2020 through July 31, 2020. However, Plaintiff did not receive compensation for his work during this time period.

19. Defendants informed Plaintiff and other employees of Defendants that if they did not continue to work while on "furlough" that they would not be returned to paid employment in the future.

20. Despite Plaintiff's repeated demands for compensation, Defendants did not compensate Plaintiff for all of the work he performed.

21. Defendants repeatedly stated that if Plaintiff continued to work that they would provide him with compensation in the future.

22. From April 1, 2020 through July 31, 2020, Defendants failed to pay Plaintiff for 17 weeks of work he performed or approximately $54,922.92, less $8,000 that was transferred to Plaintiff in July 2020.

23. At all times relevant between April 1, 2020 through July 31, 2020, Defendants were not only aware that Plaintiff was performing work for Defendants but were mandating that Plaintiff perform said work.

24. At all times relevant between April 1, 2020 through July 31, 2020, Defendants benefited from the work performed by Plaintiff.

25. Pursuant to Section 3(b) of the Agreement, Plaintiff was to receive a signing bonus on or before the tenth business day after the Commencement Date in the amount of

$72,000.00.

26. Defendants failed to pay Plaintiff a signing bonus on or before the tenth business day after the Commencement Date in the amount of $72,000.00.

27. Despite repeated requests to do so, to date, Defendants have failed to pay Plaintiff the signing bonus in material breach of the Agreement.

28. Defendants do not have a good faith reason for refusing to pay Plaintiff the signing bonus as set forth in the Agreement.

29. Pursuant to Section 3(d) of the Agreement, Plaintiff was to receive a monthly stock incentive or bonus award of 4,500 shares of Parent common stock per month to be granted on or before the fifteenth day of every calendar month beginning on August 15, 2019.

30. From August 2019 through April 1, 2020 Plaintiff was never paid any shares of stock in any month in breach of the Agreement.

31. From April 1, 2020 through July 31, 2020, Plaintiff did not receive compensation for all of the work he performed and was not provided the 4,500 shares of Parent common stock per month as set forth in the Agreement.

32. Pursuant to Section 6(c), if Plaintiff's employment is terminated by Defendants without cause then the Defendants shall pay Plaintiff severance payments equal to six months of Base Salary.

33. Plaintiff was placed on "furlough" without cause on April 6, 2020 which was to be effective as of April 1, 2020.

34. Plaintiff has not been provided with a severance payment equal to six months of Base Salary. Six months of Base Salary is equal to $84,000.

35. Defendants withheld Plaintiff's wages without any legitimate reason to do so.

36. There was no good-faith dispute regarding the amount of wages owed to Plaintiff.

37. Defendants' failure and/or refusal to compensate Plaintiff for all of his wages and compensation pursuant to the Agreement earned was willful.

38. On July 31, 2020, Plaintiff informed Defendants that he would no longer be providing his services until he received compensation for work performed to date.

39. At all times relevant, Defendant PlayLive Nation was the alter ego or business conduit of Defendant Simplicity.

40. At all times relevant, Defendant Simplicity so dominated and controlled Defendant PlayLive Nation as to make it simply instrumentality or adjunct to Defendant Simplicity.

41. Upon information and belief, Defendant Simplicity financed Defendant PlayLive Nation, intermingled funds or utilized the bank accounts of Defendant PlayLive Nation for the benefit of Defendant Simplicity's employees and business.

42. Upon information and belief, Defendant Simplicity failed to maintain formalities of separate corporate existence between Defendants.

43. Defendants did not act in good faith in their dealings with Plaintiff.

44. As a result of Defendants' material breach of the Agreement Plaintiff was damaged.

45. As a result of Defendants' refusal to pay Plaintiff for work performed, Defendants have been unjustly enriched to the detriment of Plaintiff.

46. The amount in controversy exceeds $75,000.

## COUNT I

## (VIOLATION OF ARIZONA WAGE STATUTES)

47. Plaintiff incorporates by reference all of the above allegations as though fully set forth herein.

48. At all relevant times, Plaintiff was employed by Defendants within the meaning of the Arizona Wage Statute.

49. At all times relevant, Defendants were an employer within the meaning of the Arizona Wage Statute.

50. At all times relevant, Defendant PlayLive Nation, Inc was the alter ego of Defendant Simplicity.

51. Defendants have failed to pay all wages to Plaintiff in violation of the Arizona Wage Statute.

52. Defendants were aware or reasonably should have been aware of their obligation to timely pay wages pursuant Arizona's Wage Statute.

53. Defendants knew or reasonably should have known that they were obligated to pay all wages due to Plaintiff pursuant to §23-352 and §23-353.

54. Defendants failed to timely pay Plaintiff his wages due without a good faith basis for withholding the wages pursuant to A.R.S. §23-352 and §23-353.

55. Defendants have willfully failed and refused to timely pay wages due to Plaintiff. As a result of Defendants' unlawful acts, Plaintiff is entitled to the statutory remedies provided pursuant to A.R.S. § 23-355.

56. This action arises out of a contract, expressed or implied, and therefore, pursuant to A.R.S. § 23-364(g) and A.R.S. § 12-341.01, Plaintiff is entitled to recover his costs and reasonable attorneys' fees incurred herein.

//

//

## COUNT II

## (BREACH OF CONTRACT)

57. All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

58. Plaintiffs entered into an Employment Agreement (the "Agreement") with Defendants.

59. This Agreement is a valid and enforceable agreement.

60. Defendants materially breached the employment agreements as described in this Complaint.

61. Defendant PlayLive Nation, Inc. directly or as the alter ego of Defendant Simplicity, failed to perform its promises to Plaintiffs.

62. Defendants materially breached the Agreement by failing to timely provide compensation as set forth in the Agreement.

63. Plaintiff was harmed and continues to be harmed by the breach of the employment agreements.

64. This action arises out of a contract, expressed or implied, and therefore, pursuant to A.R.S. § 12-341.01, Plaintiff is entitled to recover his costs and reasonable attorneys' fees incurred herein.

65. Plaintiff is also entitled to recover interest on his claims at the legal rate of interest.

## COUNT III

## (BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING)

66. All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

67. The covenant of good faith and fair dealing is implied in every contract.

68. The covenant of good faith and fair dealing requires that all Defendants not act in a way that wrongfully impairs the rights of Plaintiff to receive the benefits which flow from the Agreement.

69. Defendants' conduct acted in way that impaired the rights of Plaintiff to receive the benefits of his Agreement.

70. As a result, Plaintiff suffered significant damage.

71. Plaintiff justifiably relied upon Defendants' representations, actions, and omissions to their detriment.

72. As a direct and proximate result of Defendants' breaches, Plaintiff has suffered loss of employment, diminished employment prospects, economic losses, and severe anguish and distress. As a consequence, Plaintiff has suffered loss of income in the form of past, present, and future wages and savings.

73. As a result of Defendants' breach, Plaintiffs seek all compensatory, consequential, and incidental damages available to him in an amount to be proven at trial.

### COUNT IV

### (UNJUST ENRICHMENT)

74. All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

75. Defendants were enriched by the work performed by Plaintiff from April 1, 2020 through July 31, 2020.

76. Plaintiff suffered an impoverishment because of Defendants' refusal to compensate Plaintiff for the work he performed.

77. Defendants have no legitimate justification for the enrichment and refusal to compensate Plaintiff for the work her performed.

78. There is an absence of a remedy provided by the law.

79. Plaintiff was damage in an amount to be proven at trial.

## CONCLUSION AND PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays:

A. For the Court to declare and find that the Defendants committed one or more of the following acts:

   i. willfully violated the Arizona Wage Statute by failing to timely pay all wages and commissions due to Plaintiff;

   ii. breached the Contract between Plaintiff and Defendants;

   iii. breached the duty of good faith and fair dealing; and

   iv. Defendant was unjustly enriched.

B. For the Court to award monetary damages for all wage compensation and common stock owed in an amount to be proven at trial;

C. For the Court to award treble damages pursuant to A.R.S. § 23-355, to be determined at trial;

D. For all relief available under the breach of contract claims;

E. For the Court to award interest on all wage compensation due, accruing from the date such amounts were due under all causes of action set forth herein;

F. For the Court to award such other monetary, injunctive, equitable, compensatory, punitive and declaratory relief as the Court deems just and proper;

G. For the Court to award Plaintiff's reasonable attorneys' fees and costs pursuant to

A.R.S. § 23-364(g) and A.R.S. § 12-341.01 and all other causes of action set forth herein; and

H.    Any other remedies or judgments deemed just and equitable by this Court.

RESPECTFULLY SUBMITTED August 5, 2020.

**ZOLDAN LAW GROUP, PLLC**

By: /s/ James Weiler
14500 N. Northsight Blvd, Suite 133
Scottsdale, AZ 85260
Attorneys for Plaintiff